IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>ROOSEVELT RICO DAHDA,<br><br>  Defendant. | CRIMINAL ACTION<br>No. 04-20060-01-DDC<br><br>CIVIL ACTION<br>No. 22-2474-DDC |

## MEMORANDUM AND ORDER

On March 1, 2005, former United States District Judge Carlos Murguia sentenced Roosevelt Dahda to 90 months in prison and three years of supervised release. On November 29, 2010, the Bureau of Prisons (BOP) released Mr. Dahda and he began his term of supervised release. On September 29, 2015, on revocation of Mr. Dahda's supervised release, Judge Kathryn H. Vratil of our court sentenced him to 30 months in prison to run consecutive to his sentence in another case, D. Kan. No. 12-20083-02. This matter comes before the court now on Mr. Dahda's pro se[1] Petition for a Writ of Coram Nobis Pursuant to 28 U.S.C. § 1651 (Doc. 105). The government filed a Response (Doc. 112), and Mr. Dahda filed a Reply (Doc. 113). For reasons explained below, the court denies Mr. Dahda's petition.

**I. Background**

On October 18, 2004, in this 2004 case, Mr. Dahda pleaded guilty to acquiring a firearm by making false or fictitious statements, in violation of 18 U.S.C. § 922(a)(6), possession of

---

[1] Because Mr. Dahda proceeds pro se, the court construes his filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court does not assume the role of advocate for a pro se litigant. *Id.*

firearms while under indictment, in violation of 18 U.S.C. § 922(n), possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D), possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and use and possession of a firearm in relation to and in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  Plea Agreement (Doc. 68) at 1.  The Presentence Investigation Report (PSR) calculated a Base Offense Level of 20 based on a converted quantity of 56.714 kilograms of marijuana.  PSR ¶ 44; *see* U.S.S.G. § 2D1.1(c)(10) (Nov. 1, 2004 ed.).  After a two-level reduction for Mr. Dahda's acceptance of responsibility, his Total Offense Level was 18 with a criminal history category of I, producing a guideline sentencing range of 27 to 33 months.  PSR ¶ 101.  In addition, Mr. Dahda's conviction for use and possession of a firearm in relation to a drug trafficking crime under 18 U.S.C. § 924(c) included a mandatory sentence of 60 months and by statute, he had to serve the 60 months consecutively to his sentence on the other convictions.  PSR ¶ 102.  On March 1, 2005, the court sentenced Mr. Dahda to 90 months in prison and three years of supervised release.[2]  On November 29, 2010, the BOP released Mr. Dahda and he began his term of supervised release.

On July 23, 2014, in D. Kan. Case No. 12-20083, a jury found Mr. Dahda guilty of conspiracy to possess marijuana with intent to distribute it and to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, five counts of using a communication facility to facilitate a drug trafficking offense, in violation of 21 U.S.C. § 843(b), two counts of possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D), possession with intent to distribute and distribution of marijuana within 1,000 feet of a

---

[2]   On each of Counts 1, 4, 6 and 7, the court imposed a sentence of 30 months in prison to run concurrently with each other.  On Count 8, the court imposed a sentence of 60 months in prison to run consecutively to the term of imprisonment imposed on Counts 1, 4, 6 and 7.  On all counts, the court imposed a term of three years of supervised release to run concurrently with the other counts.

playground, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D), and 860, and attempted possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D).  Judge Vratil ultimately sentenced Mr. Dahda to 141 months in prison on this 2012 case.[3]

On September 29, 2015, based on Mr. Dahda's violation of the terms of his supervised release in the 2004 case, Judge Vratil sentenced him to 30 months, that sentence to run consecutively to the 141 month sentence imposed in the 2012 case.  *See* Judgment In A Criminal Case (Doc. 93) at 3, filed October 6, 2015.  Mr. Dahda did not appeal his revocation judgment or the sentence for it.

The BOP aggregated Mr. Dahda's consecutive sentences of 141 months in the 2012 case and 30 months in the 2004 case.  *See* 18 U.S.C. § 3584(c) ("Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment.").  With good time credit, should he earn it, Mr. Dahda's expected release date is August 18, 2024.

In Mr. Dahda's current motion, he seeks to vacate his convictions on Count 1 of the 2004 case (acquiring a firearm by making false or fictitious statements in violation of 18 U.S.C. § 922(a)(6)) and Count 4 in the same case (possession of firearms while under indictment in violation of 18 U.S.C. § 922(n)).  He claims they are unconstitutional in light of *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

---

[3]     On September 29, 2015, Judge Vratil sentenced Mr. Dahda to 201 months in prison and 10 years of supervised release in the 2012 case.  On remand from the Tenth Circuit, Judge Vratil resentenced Mr. Dahda to a controlling term of 141 months in prison and six years of supervised release.  On December 21, 2019, Mr. Dahda appealed his sentence again.  *See* Notice Of Appeal (Doc. 2718).  On April 30, 2021, the Tenth Circuit affirmed.  *United States v. Roosevelt Dahda*, 854 F. App'x 267 (10th Cir. 2021).

**II.     Discussion**

"A district court is authorized to modify a [d]efendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so."  *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) (quoting *United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996)).  After the court imposes a sentence, "the court has no authority to modify that sentence," except in "three, very limited circumstances" that are "set forth in 18 U.S.C. § 3582(c)."  *United States v. Mannie*, 971 F.3d 1145, 1147–48 (10th Cir. 2020); *see United States v. Spaulding*, 802 F.3d 1110, 1124 (10th Cir. 2015) ("[Section] 3582(c) acts as a jurisdictional limitation on the ability of district courts to alter previously imposed sentences of imprisonment.").  The three exceptions authorize modifications for extraordinary and compelling reasons, if the Sentencing Commission lowers the sentencing range, or if permitted expressly by statute or Fed. R. Crim. P. 35.  18 U.S.C. § 3582(c).

Here, Mr. Dahda seeks a writ of coram nobis under the All Writs Act, 28 U.S.C. § 1651, which authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651; *see United States v. Denedo*, 556 U.S. 904, 911 (2009) ("the authority to grant a writ of coram nobis is conferred by the All Writs Act").  To deserve coram nobis relief, a defendant must show that (1) he exercised due diligence in seeking the writ; (2) he has no alternative remedies; (3) his petition for relief does not litigate issues that he raised or could have raised on direct appeal or in a collateral attack; and (4) he must demonstrate that the asserted error is jurisdictional or constitutional and it produces a complete miscarriage of justice.  *United States v. Lujan*, No. 22-2014, 2022 WL 17588500, at *2 (10th Cir. Dec. 13, 2022) (citations omitted).

The government argues that Mr. Dahda is not entitled to relief because (1) he has an alternative remedy under 28 U.S.C. § 2255, (2) his petition is barred because he waived the right to collaterally attack his sentence in his written Plea Agreement, and (3) even after *Bruen*, his convictions under Sections 922(a) and 922(n) survive constitutional scrutiny.

### A.  Whether Mr. Dahda Has an Alternative Remedy under 28 U.S.C. § 2255

A prerequisite for a defendant to file a petition for a writ of coram nobis is that he no longer can seek habeas relief under 28 U.S.C. § 2255 or § 2241, *i.e.* that he is no longer "in custody." *Chaidez v. United States*, 568 U.S. 342, 345 n.1 (2013) ("A petition for a writ of coram nobis provides a way to collaterally attack a criminal conviction for a person . . . who is no longer 'in custody' and therefore cannot seek habeas relief under 28 U.S.C. § 2255 or § 2241."); *United States v. Estrada*, 580 F. App'x 672, 673 (10th Cir. 2014) ("A coram nobis request under the All Writs Act, 28 U.S.C. § 1651(a), may be considered when the movant is not in custody and therefore ineligible for habeas corpus relief under 28 U.S.C. § 2255."); *see United States v. Torres*, 282 F.3d 1241, 1245 (10th Cir. 2002) ("[A] prisoner may not challenge a sentence or conviction for which he is currently in custody through a writ of coram nobis."); *see also* 28 U.S.C. § 2255(a) (prisoner "in custody under sentence of a court established by Act of Congress claiming the right to be released" may "move the court which imposed the sentence to vacate, set aside or correct the sentence").  For purposes of Section 2255, a defendant serving a term of supervised release remains "in custody." *United States v. Cervini*, 379 F.3d 987, 989 n.1 (10th Cir. 2004); *see Jones v. Cunningham*, 371 U.S. 236, 242 (1963) (prisoner placed on parole still "in custody" under his unexpired sentence).  Likewise, when a court revokes a defendant's supervised release and sentences him to BOP custody, he remains "in custody" as part of the

5

final sentence for his initial offense.[4] *See United States v. Haymond*, 139 S. Ct. 2369, 2379–80 (2019) ("defendant receives a term of supervised release thanks to his initial offense, and whether that release is later revoked or sustained, it constitutes a part of the final sentence for his crime"); *United States v. Robinson*, 62 F.3d 1282, 1286 (10th Cir. 1995) ("supervised release is a separate part of the original sentence"); *see also Johnson v. United States*, 529 U.S. 694, 701 (2000) ("postrevocation penalties relate to the original offense"); *United States v. Bruley*, 15 F.4th 1279, 1284 (10th Cir. 2021) ("After finding violations of the conditions of supervised release, the district court, following the mandate of § 3583(e), turned to the *underlying conviction* to determine the maximum amount of imprisonment allowed for revocation.") (emphasis added). *But cf. United States v. Westover*, No. 04-CR-171-F-4, 2021 WL 4132277, at *4 (D. Wyo. Sept. 10, 2021) (defendant "is not in custody serving his underlying sentence—he is serving a revocation sentence because of his violations of supervised release").

---

[4] When it addressed Mr. Dahda's earlier motion to reduce his sentence under 18 U.S.C. § 3582(c)(2), the court held that it lacked jurisdiction to consider the motion because he is no longer in custody "on a sentence that was 'based on a guideline range the Sentencing Commission lowered subsequent to defendant's sentencing.'" *United States v. Dahda*, No. 04-20060-01-DDC, 2022 WL 4079021, at *4 (D. Kan. Sept. 6, 2022) (quoting *United States v. C.D.*, 848 F.3d 1286, 1288 (10th Cir. 2017)). Mr. Dahda concludes from that earlier ruling that he no longer is in custody for his 2004 convictions. Mr. Dahda's argument conflates the requirements for relief under Section 3582(c)(2) and Section 2255.

Under Section 3582(c)(2), the court may modify a "term of imprisonment" only if defendant has not already served it. *See United States v. Wilson*, 799 F. App'x 792, 794 (11th Cir. 2020) ("Our authority to grant § 3582(c)(2) relief to [defendant] vanished once he served his entire term of imprisonment, regardless of whether he is on supervised release as a result of his conviction."); *see also United States v. Martin*, 974 F.3d 124, 144 (2d Cir. 2020) ("If Congress intended to permit the retroactive modification of a sentence that has already been served, it could have done so."); U.S.S.G. § 1B1.10(b)(2)(C) ("In no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served."). In contrast, under Section 2255, even if a defendant has already served his original term of imprisonment, the court may vacate a conviction or sentence if he remains "in custody" on some component of the sentence in the case.

6

Because Mr. Dahda is serving a revocation sentence in this case, the precedent views him as "in custody" under Section 2255 for purposes of challenging his original convictions. He thus cannot bring a petition for writ of error coram nobis.

The parties haven't addressed whether the coram nobis requirement—*i.e.*, that a defendant have no alternative remedies—is a jurisdictional one. The All Writs Act is a residual source of authority to issue writs not otherwise covered by statute. *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985). As such, "the All Writs Act and the extraordinary relief the statute authorizes are not a source of subject-matter jurisdiction." *United States v. Denedo*, 556 U.S. 904, 913 (2009). Although the All Writs Act "empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Pa. Bureau of Corr.*, 474 U.S. at 43.

The Tenth Circuit hasn't issued a published opinion addressing whether the writ of coram nobis requirement that a defendant lack alternative remedies is a jurisdictional one.[5] Even so, the Supreme Court recently has clarified that "when Congress does not rank a prescription as

---

[5] In two unpublished opinions, the Tenth Circuit affirmed a district court's denial—rather than dismissal—of coram nobis relief because the defendant was in custody. *Estrada*, 580 F. App'x at 673 (affirming district court's "denial" of coram nobis relief because defendant on supervised release remained in custody for purposes of Section 2255); *United States v. Thody*, 460 F. App'x 776, 778–79 (10th Cir. 2012) (holding district court didn't abuse its discretion when it "denied" defendant a writ of coram nobis because he currently was in custody for the conviction he was challenging). On the other hand, at least one unpublished Tenth Circuit decision and one other circuit's unpublished opinion have treated the unavailability of other remedies as a jurisdictional prerequisite. *See United States v. Beals*, 145 F.3d 1346 (Table), 1998 WL 229611, at *1 n.1 (10th Cir. 1998) (holding that district court "lacked jurisdiction to entertain defendant's petition for writ of error coram nobis" because he was "in custody" for § 2255 purposes); *United States v. Goodwin*, 116 F. App'x 879, 880 (9th Cir. 2004) (affirming district court order denying defendant's petition for writ of coram nobis for lack of jurisdiction because he was "in custody"); *see also United States v. Warren*, 22 F.4th 917, 926 (10th Cir. 2022) (unless motion "falls squarely within one of the three exceptions set out by § 3582(c), under our existing precedent, we lack jurisdiction"); *United States v. Rhines*, 640 F.3d 69, 71 (3d Cir. 2011) (affirming district court's order dismissing petition, noting "court's jurisdiction to grant [coram nobis] relief is of limited scope").

7

jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1850 (2019) (alterations incorporated; internal quotation marks omitted).

The All Writs Act authorizes the court to issue a writ that is "necessary or appropriate in aid of [its] respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. While courts have interpreted this language to mean that a writ is not "necessary or appropriate" if petitioner is able to seek relief under Sections 2255 or 2241, Congress did not specify that the "necessary or appropriate" requirement is jurisdictional in character. The court thus declines to treat the requirement as jurisdictional, and denies Mr. Dahda's petition. *See Fort Bend Cnty.*, 139 S. Ct. at 1850; *see also United States v. Petlechkov*, No. 22-6043, 2023 WL 4230905, at *4 (6th Cir. June 28, 2023) (noting that after recent Supreme Court precedent, the requirement that petitioner is not "in custody" may not be jurisdictional) (citing *Wilkins v. United States*, 143 S. Ct. 870, 877–78 (2023) (discussing "drive-by jurisdictional ruling[s]")); *United States v. Hemmelgarn*, 15 F.4th 1027, 1030–31 (10th Cir. 2021) (declining to treat exhaustion requirement in compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as jurisdictional).

But, even if Mr. Dahda were not "in custody" and could no longer seek relief under Section 2255, the court would deny coram nobis relief because he waived the right to collaterally attack his conviction. The court discusses Mr. Dahda's waiver, below.

### B. Waiver of Collateral Attacks

The government argues that Mr. Dahda's challenge to the validity of his convictions on Counts 1 and 4 is barred because he waived the right to collaterally attack his sentence in the Plea Agreement. The government asks the court to enforce the collateral attack waiver.

8

To determine whether a collateral attack waiver is enforceable, the court must determine whether a defendant's collateral attack falls within the scope of the waiver, whether the defendant knowingly and voluntarily waived his rights, and whether enforcing that waiver would produce a miscarriage of justice. *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004). The court addresses these three factors, in turn, below.

### 1. Scope

The court first considers whether Mr. Dahda's collateral attack falls within the scope of the waiver. *See id*. The court strictly construes any waiver in the Plea Agreement and resolves any ambiguities in favor of defendant's right to collaterally attack his sentence. *Id.*

Here, Mr. Dahda argues that the plea waiver doesn't apply because it doesn't include coram nobis relief explicitly. Mr. Dahda has the facts right. The waiver in his Plea Agreement doesn't explicitly waive his right to petition for coram nobis relief. Nevertheless, his right to petition for a writ of coram nobis falls directly within the scope of his collateral attack waiver. Mr. Dahda waived his right to challenge or collaterally attack his sentence in any manner. *See United States v. Chavez-Salais*, 337 F.3d 1170, 1172 (10th Cir. 2003) (determining that collateral attacks include challenges under 28 U.S.C. § 2255, "that complain about the substance of, or proceedings that determined, a defendant's original sentence or conviction"). The conventional understanding of "collateral attack" includes writs of coram nobis because it is an "extraordinary remed[y] that complain[s] about the substance of, or proceedings that determined, a defendant's original sentence or conviction." *Id.* ("The conventional understanding of 'collateral attack' comprises challenges brought under, for example, 28 U.S.C. § 2241, 28 U.S.C. § 2254, 28 U.S.C. § 2255, as well as writs of coram nobis."). Mr. Dahda's petition for coram nobis

9

challenging the constitutionality of the statutes of conviction on Counts 1 and 4 falls within the scope of the bargained for waiver of collateral attack rights.

### 2. Knowing and Voluntary

The *Hahn* test also requires courts to determine whether a defendant "knowingly and voluntarily" waived his rights. *Hahn*, 359 F.3d at 1325. Mr. Dahda's Plea Agreement demonstrates that he made a knowing and voluntary waiver of his rights to appeal or collaterally attack his sentence. Mr. Dahda's Plea Agreement provides that he "knowingly and voluntarily waive[d] any right to appeal or collaterally attack any matter in connection with this prosecution, conviction and sentence." Doc. 68 at 7. Mr. Dahda explicitly waved his "right to challenge [the] sentence or otherwise attempt to modify or change his sentence or manner in which it was determined in any collateral attack." *Id.* The Plea Agreement also recites he "acknowledges that [he] is entering into this agreement . . . freely and voluntarily." *Id*. at 10. And, during Mr. Dahda's plea hearing, he agreed that under the Plea Agreement, he had "waive[d] any appeal or collateral attack rights." Doc. 110 (Tr. of Plea Hr'g Oct. 18, 2004) at 17. Also, Mr. Dahda assured the court that he had no questions about the Plea Agreement. *Id.* at 20. Based on the plea colloquy, the court found that Mr. Dahda "voluntarily waived his Constitutional rights" and that he had entered his plea "freely and voluntarily" and understood the consequences of his plea. *Id.* at 24–25. The Plea Agreement and plea colloquy establish that Mr. Dahda knowingly and voluntarily waived the right to challenge his sentence through a collateral attack.

### 3. Miscarriage of Justice

The Tenth Circuit has identified several "components" courts should consider when determining whether enforcing a plea agreement will produce a miscarriage of justice. *Hahn*, 359 F.3d at 1327. These components include whether a court relied on an impermissible factor

10

such as race; whether ineffective assistance of counsel rendered the appellate waiver invalid; whether the sentence exceeded the statutory maximum; or whether the waiver is "otherwise unlawful." *Id.* (citations omitted).  Judicial enforcement of waiver is unlawful if doing so "seriously affect[s] the fairness, integrity[,] or public reputation of judicial proceedings." *Id.* (citation and internal quotation marks omitted).  Courts must consider "whether the waiver itself is unlawful because of some procedural error or because no waiver is possible," not whether the conviction or sentence is unlawful.  *United States v. Sandoval*, 477 F.3d 1204, 1208 (10th Cir. 2007).  At least one of these exceptions must apply for a waiver to produce a miscarriage of justice, *id.*, and defendant bears the burden to demonstrate that enforcing the waiver results in a miscarriage of justice.  *United States v. Anderson*, 374 F.3d 955, 959 (10th Cir. 2004).

Here, Mr. Dahda presents no argument that the court relied on race or some other impermissible factor when it accepted his guilty plea or sentenced him, or that ineffective assistance of counsel during plea negotiations rendered his waiver invalid.  No facts suggest that enforcement of his collateral attack waiver would seriously affect the fairness, integrity, or public reputation of the judicial system.  *Hahn*, 359 F.3d at 1327.

Mr. Dahda's lone miscarriage of justice argument contends that enforcing his waiver would mean that he stands convicted of conduct that is not criminal after *Bruen*.  As explained above, in determining whether to apply the exception for a miscarriage of justice, the court considers "whether the waiver itself is unlawful," not whether a defendant's conviction or sentence is unlawful.  *Sandoval*, 477 F.3d at 1208.

"Supreme Court precedent is quite explicit that as part of a plea agreement, criminal defendants may waive both rights in existence and those that result from unanticipated later judicial determinations." *United States v. Porter*, 405 F.3d 1136, 1144 (10th Cir. 2005) (citing

11

*Brady v. United States*, 397 U.S. 742, 757 (1970)).  In an unpublished decision, the Tenth Circuit recently held that a defendant's facial constitutional challenge under *Bruen* did not render "the appeal waiver in a plea agreement otherwise unlawful under the miscarriage-of-justice exception."  *United States v. Haas*, No. 22-5054, 2022 WL 15048667, at *3 (10th Cir. Oct. 27, 2022) (defendant failed to show that appeal of conviction under 18 U.S.C. § 922(g)(8) based on *Bruen* was outside scope of waiver or that enforcing waiver would produce miscarriage of justice).  In any event, the weight of authority suggests that Mr. Dahda's constitutional challenges to his convictions under Sections 922(a) and 922(n) lack substantive merit.  *See United States v. Holden*, No. 22-3160, 2023 WL 4039607, at *2 (7th Cir. June 16, 2023) (unlikely that § 922(n) is facially invalid); *United States v. Rodriguez*, No. 22-10896, 2023 WL 4044409, at *1 (5th Cir. June 16, 2023) (no clear or obvious error because no binding precedent holds § 922(n) unconstitutional, and "it is not clear *Bruen* dictates such a result"); *United States v. Evenson*, No. CR-23-24-BLG-SPW, 2023 WL 3947828, at *2 (D. Mont. June 12, 2023) (§ 922(n) is constitutional even after *Bruen*); *United States v. Soto*, No. SA-22-CR-302-JKP, 2023 WL 1087886, at *6 (W.D. Tex. Jan. 27, 2023) ("*Bruen* decision does not constitute an intervening change in law which renders § 922(a)(6) unconstitutional").  *But see United States v. Stambaugh*, No. CR-22-00218-PRW-2, 2022 WL 16936043, at *5–6 (W.D. Okla. Nov. 14, 2022) (§ 922(n) is unconstitutional as applied to defendant indicted for larceny but found fit to be released on bail), *reconsideration denied*, 2023 WL 172037 (W.D. Okla. Jan. 12, 2023); *United States v. Quiroz*, 2022 WL 4352482, at *13 n.119 (W.D. Tex. Sept. 19, 2022) (§ 922(n) is facially unconstitutional).[6]

---

[6]  Even if Mr. Dahda could prevail on the merits, he doesn't assert that vacating his convictions on Counts 1 and 4 would have any practical effect on the length of his revocation sentence.  As explained above, on all counts, the court imposed a term of three years of supervised release to run concurrently with the other counts.  On revocation of Mr. Dahda's supervised release, the court imposed an additional

The court concludes that no procedural or other error barred Mr. Dahda's waiver and that enforcing the waiver won't produce a miscarriage of justice. Therefore, Mr. Dahda cannot pursue his challenge to his convictions on Counts 1 and 4 because he knowingly and voluntarily waived his right to collaterally attack his sentence, and this court properly can enforce this waiver.

### III. Conclusion

As explained above, the court denies Mr. Dahda's coram nobis petition because he has not shown that he lacks a remedy under 28 U.S.C. § 2255. But even if Mr. Dahda lacks access to such a remedy, the court enforces the Plea Agreement's waiver of his right to collaterally attack his convictions. The court thus denies Mr. Dahda's petition for a writ of coram nobis.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Roosevelt Dahda's pro se Petition for a Writ of Coram Nobis Pursuant to 28 U.S.C. § 1651 (Doc. 105) is denied.

**IT IS SO ORDERED.**

**Dated this 11th day of July, 2023, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

---

30 months in prison. So, even if *Bruen* nullifies his convictions on Counts 1 and 4, he still must serve the same revocation sentence for violation of the terms of his supervised release on the unaffected Counts 6, 7 and 8.